UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
CUMIS INSURANCE SOCIETY, INC.,            )
)
        Plaintiff,                        )
)
        v.                                )        Civil Action No. 05-1277 (PLF)
)
REGINALD CLARK, et al.,                   )
)
        Defendants.                       )
_____)

OPINION

        This matter comes before the Court on plaintiff CUMIS Insurance Society, Inc.'s

motion for summary judgment, originally filed on November 8, 2007, and supplemented on May

26, 2017, and defendant Reginald Clark's motion to dismiss, originally filed on September 18,

2009, and supplemented on May 30, 2017. For the following reasons, the Court will deny both

motions.[1] The Court will deny the motion for summary judgment without prejudice.

---

[1]        In connection with the pending motions, the Court has reviewed the following
filings, including the exhibits attached thereto: Complaint [Dkt. No. 1] ("Compl."); Defendant's
Motion to Dismiss Complaint and Request for a Hearing [Dkt. No. 5] ("Initial Mot. to Dismiss");
Defendant's Supplemental Motion to Dismiss [Dkt. No. 18] ("Suppl. Initial Mot. to Dismiss");
Answer to Complaint and Demand for Jury Trial [Dkt. No. 27] ("Answer"); Amended Complaint
[Dkt. No. 30] ("Am. Compl."); Defendant's Motion for to [sic] Stay Proceedings [Dkt. No. 37]
("Mot. to Stay"), Plaintiff's Opposition [Dkt. No. 41] ("Opp'n to Mot. to Stay"), and
Defendant's Reply [Dkt. No. 43] ("Reply to Mot. to Stay"); Plaintiff's Motion to Lift Stay [Dkt.
No. 52] ("Mot. to Lift Stay"), Defendant's Opposition [Dkt. No. 54] ("Opp'n to Mot. to Lift
Stay"), and Plaintiff's Reply [Dkt. No. 56] ("Reply to Mot. to Lift Stay"); Defendant's Motion to
Compel Production of Documents [Dkt. No. 39] ("Mot. to Compel"), Plaintiff's Opposition
[Dkt. No. 40] ("Opp'n to Mot. to Compel"), and Defendant's Reply [Dkt. No. 42] ("Reply to
Mot. to Compel"); Plaintiff's Motion to Reconsider and Modify Order Granting Motion to
Compel [Dkt. No. 59] ("Mot. to Recons."); Plaintiff's Motion for Summary Judgment [Dkt. No.
62] ("Mot. for Summ. J."), Defendant's Opposition [Dkt. No. 63] ("Opp'n to Mot. for Summ.
J."), and Plaintiff's Reply [Dkt. No. 64] ("Reply to Mot. for Summ. J."); Defendant's Motion to

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case has a long history, with two lengthy stays in the litigation due to related criminal proceedings. As a result, the Court is only now tasked with resolving the parties' first substantive dispositive motions in the case. Because it has not had prior occasion to do so, the Court briefly summarizes here the factual and procedural background.

Between April 2001 and July 2003, defendant Reginald Clark was employed as an accountant for Hoya Federal Credit Union ("Hoya") at its Georgetown University branch in Washington, D.C. See Am. Compl. at ¶¶ 8-9; Answer at ¶¶ 8-9.[2] CUMIS alleges that during the course of Mr. Clark's employment, he engaged in fraudulent conduct that caused financial damages to Hoya. As Hoya's insurer, CUMIS seeks to recover the funds it disbursed to Hoya pursuant to its fidelity bond.

More specifically, CUMIS alleges that Mr. Clark engaged in several types of fraudulent conduct or schemes. First, CUMIS alleges that Mr. Clark "often volunteered" to bring the daily deposits to Hoya's bank, but then "took the deposit bag to his residence, removed

---

Dismiss [Dkt. No. 70] ("Mot. to Dismiss"), and Plaintiff's Opposition [Dkt. No. 71] ("Opp'n to Mot. to Dismiss"); Plaintiff's Revised Memorandum in Support of Motion for Summary Judgment [Dkt. No. 163] ("Suppl. Mot. for Summ. J."), Defendant's Opposition [Dkt. No. 168] ("Opp'n to Suppl. Mot. for Summ. J."), and Plaintiff's Reply [Dkt. No. 166] ("Reply to Suppl. Mot. for Summ. J."); Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim [Dkt. No. 164] ("Suppl. Mot. to Dismiss"), Plaintiff's Opposition [Dkt. No. 165] ("Opp'n to Suppl. Mot. to Dismiss"), and Defendant's Reply [Dkt. No. 167] ("Reply to Suppl. Mot. to Dismiss").

[2]     Although Mr. Clark filed an answer to plaintiff's original complaint, he never answered plaintiff's amended complaint, but instead moved to dismiss it. With respect to the allegations against Mr. Clark, however, the amended complaint does not differ from the original complaint in any way. Compare Compl. at ¶¶ 1-53, with Am. Compl. at ¶¶ 1-53. The amended complaint merely added additional counts against two other defendants. See Am. Compl. at ¶¶ 54-62. Thus, the Court treats Mr. Clark's answer to CUMIS's original complaint as also responsive to the allegations made against him in the amended complaint.

the cash from the deposits, created new deposit slips without a reference to a cash deposit, and then deposited the checks the following business day." See Am. Compl. at ¶ 12. Second, CUMIS alleges that Mr. Clark participated in "stop payment" schemes with checks written from his own account and the accounts of other Hoya members. See id. at ¶¶ 13-14. Essentially, by placing "stop payment" orders on checks written from these accounts and subsequently deleting the records of the "stop payment" orders, as well as the drafts themselves, Hoya's bank would pay out the check amounts, but the funds would not be debited from the accounts. See id. Finally, CUMIS alleges that Mr. Clark arranged fraudulent wire transfers on at least three occasions, processing the largest two "when Hoya's manager was out of the office" and asserting to another employee that he "had instructions from Hoya's manager to carry out the transactions," thereby "cloaking himself in false authority." See id. at ¶¶ 15-16, 23. CUMIS alleges that this conduct caused Hoya to suffer losses "in excess of $540,196.14." See id. at ¶ 17. And as Hoya's insurer, CUMIS compensated Hoya in the amount of $540,196.14 and now is subrogated to Hoya's rights in that same amount. See id. at ¶ 18.

On June 28, 2005, CUMIS brought suit against Mr. Clark alleging fraud, breach of fiduciary duty, and unjust enrichment. See Am. Compl. at ¶¶ 19-34.[3] Mr. Clark filed his answer on February 13, 2006, denying liability on all counts and including his demand for a jury

---

[3]     Plaintiff also brought claims of unjust enrichment against defendants Derrick Eatmon, Tonia Shuler, Mae Smith, Kenard Walston, and Tanya Hubbard. See Am. Compl. at ¶¶ 35-62. On December 20, 2005, the Court entered default judgment against Tonia Shuler in the amount of $3,291.50. See Order & J. [Dkt. No. 17] (Dec. 20, 2005). It appears that plaintiff eventually ceased attempts to prosecute each defendant, however, with the exception of Mr. Clark. After the amended complaint was filed on April 20, 2006, the Clerk's Office issued summonses for Mr. Walston and Ms. Hubbard and reissued the summons for Ms. Smith. But plaintiff never filed any proof of service for these three defendants. And although the Court issued a minute order on January 24, 2006, providing that plaintiff "may serve process on defendant Derrick Eatmon at any time until the end of discovery," it does not appear that plaintiff ever did so.

trial.[4]  On July 14, 2006, Mr. Clark moved to stay the case, invoking his Fifth Amendment

privilege against self-incrimination in light of a parallel criminal investigation and grand jury

proceedings.  See Mot. to Stay at 1-2.  In his motion to stay, Mr. Clark also asserted that the

criminal investigation was interfering with his discovery rights in the instant case.  See id. at 4;

Reply to Mot. to Stay at 1-2.  CUMIS opposed the motion to stay.  See Opp'n to Mot. to Stay.

On August 22, 2006, the Court granted Mr. Clark's motion and entered the first of two stays in

the case.  See Order [Dkt. No. 44] (Aug. 22, 2006).  On June 27, 2007, CUMIS moved to lift the

stay in light of the fact that no criminal charges had been brought and all requested discovery

materials had been made available to Mr. Clark.  See Mot. to Lift; Reply to Mot. to Lift.  On July

18, 2007, the Court issued a minute order granting this motion and lifting the stay.  Thereafter,

on November 8, 2007, CUMIS filed a motion for summary judgment, and on September 18,

2009, Mr. Clark filed a motion to dismiss.[5]  The parties thereafter filed responsive briefs

opposing and supporting their respective motions.

---

[4]    The Court notes that during the pendency of this case Mr. Clark at times has been
represented by counsel and at times has proceeded pro se.  Mr. Clark originally was represented
by attorney David Warren Lease.  But on December 4, 2006, the Court issued a minute order
granting Mr. Lease's motion to withdraw.  Mr. Clark thereafter proceeded pro se until he
retained attorney Anitha W. Johnson to oppose CUMIS's pending motion for summary
judgment.  Ms. Johnson filed an opposition on November 29, 2007, and thereafter remained
counsel of record until the Court granted her motion to withdraw on July 20, 2009.  The Court is
mindful that the filings of "pro se litigants are held to less stringent standards than those applied
to formal [briefs] drafted by lawyers." Cf. Butler v. Cal. State Disbursement Auth., 990 F. Supp.
2d 8, 8 (D.D.C. 2013) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  And the Court
construes Mr. Clark's pro se filings liberally "to conform to the nature of the relief that he
seeks." See United States v. Brown, 185 F. Supp. 3d 79, 84 (D.D.C. 2016) (citations omitted).
Thus, the Court has reviewed Mr. Clark's briefings in view of his pro se status and responds here
to each colorable argument he has raised.

[5]    Mr. Clark filed an initial motion to dismiss on August 22, 2005, challenging both
the substance of the pleadings and service of process.  See Initial Mot. to Dismiss.  On December
20, 2005, Mr. Clark filed a supplement to this motion further challenging service.  See Suppl.
Initial Mot. to Dismiss.  At a subsequent status conference, the Court denied the initial motion to

On December 15, 2009, Mr. Clark again moved to stay the proceedings. In light of an ongoing grand jury investigation, the Court issued a minute order on January 25, 2010, granting the motion to stay. Mr. Clark was subsequently indicted and then convicted of three counts of bank fraud (in violation of 18 U.S.C. § 1344), two counts of wire fraud (in violation of 18 U.S.C. § 1343), and two counts of creating a false entry in federal credit institution records (in violation of 18 U.S.C. § 1006). See Suppl. Mot. for Summ. J. Ex. E; Suppl. Mot. for Summ. J. Ex. F. Following Mr. Clark's conviction, Judge Reggie B. Walton sentenced him to sixty-three months of imprisonment, to be followed by a term of supervised release, and required him to pay restitution in the amounts of $140,000 to Hoya and $79,286.41 to CUMIS, a total of $219,286.41. See Suppl. Mot. for Summ. J. Ex. F. Mr. Clark appealed his conviction and sentence, and the United States Court of Appeals for the District of Columbia Circuit affirmed his conviction and restitution obligation, but remanded the case for resentencing. See United States v. Clark, 747 F.3d 890, 897 (D.C. Cir. 2014). On remand, Judge Walton reduced Mr. Clark's term of imprisonment, but the restitution amounts remained unchanged. See Suppl. Mot. for Summ. J. Ex. G. There are no longer any pending appeals in the criminal case, and that judgment is final.

On February 1, 2017, CUMIS filed a motion to lift the stay. After a status conference, the Court issued a minute order on April 3, 2017, granting CUMIS's motion to lift the stay. The Court also issued a separate order permitting the parties to supplement their unresolved dispositive motions. See Order [Dkt. No. 162] (Mar. 23, 2017). On May 26, 2017, CUMIS filed a revised memorandum in support of its motion for summary judgment, and on

---

dismiss and set an evidentiary hearing to resolve the contested service issues. After Mr. Clark's counsel agreed to accept service on his client's behalf, the Court canceled the evidentiary hearing and denied the supplement to the initial motion to dismiss as moot.

May 30, 2017, Mr. Clark filed a supplemental motion to dismiss.  The parties thereafter filed

responsive briefs opposing and supporting their respective motions.

## II. MOTION TO DISMISS

In his motion to dismiss, Mr. Clark asks the Court to dismiss CUMIS's complaint

on grounds that the Court lacks subject matter jurisdiction under Rule 12(b)(1) of the Federal

Rules of Civil Procedure.  He also asserts that CUMIS has failed to state a claim upon which

relief can be granted and failed to plead fraud with the requisite particularity, warranting

dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, Mr. Clark

requests dismissal as a discovery sanction.

### A.  *Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

#### 1.  Legal Standard

Federal courts are courts of limited jurisdiction, possessing only those powers

authorized by the Constitution and an act of Congress.  See, e.g., Janko v. Gates, 741 F.3d 136,

139 (D.C. Cir. 2014); Beethoven.com LLC v. Librarian of Cong., 394 F.3d 939, 945 (D.C. Cir.

2005); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  On a

motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of

establishing that the Court has jurisdiction.  See Walen v. United States, 246 F. Supp. 3d 449,

452 (D.D.C. 2017); Tabman v. FBI, 718 F. Supp. 2d 98, 100 (D.D.C. 2010).  In determining

whether to grant a motion to dismiss, however, the Court must construe the complaint in the

plaintiff's favor and treat all well-pleaded factual allegations as true.  See Attias v. Carefirst, Inc.,

865 F.3d 620, 627 (D.C. Cir. 2017); Walen v. United States, 246 F. Supp. 3d at 452-53.  And in

determining whether a plaintiff has met the burden of establishing jurisdiction, this Court may

consider materials beyond the pleadings where appropriate.  See Walen v. United States, 246 F.

Supp. 3d at 453 (citing Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011));

Tabman v. FBI, 718 F. Supp. 2d at 100 (citing Scolaro v. D.C. Bd. of Elections & Ethics, 104 F.

Supp. 2d 18, 22 (D.D.C. 2000)).

Under 28 U.S.C. § 1332, this Court has subject matter jurisdiction over a dispute

between citizens of different states where the amount in controversy exceeds $75,000, computed

without regard to any setoff or counterclaim to which the defendant may be adjudged to be

entitled and exclusive of interest and costs.  When the court considers whether a claim exceeds

the $75,000 amount-in-controversy requirement, "the plaintiff's amount-in-controversy

allegation is accepted if made in good faith."  See Dart Cherokee Basin Operating Co. v. Owens,

135 S. Ct. 547, 553 (2014).  Dismissal is justified only if it "appear[s] to a legal certainty that the

claim is really for less than the jurisdictional amount."  See Bronner v. Duggan, 249 F. Supp. 3d

27, 37 (D.D.C. 2017) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289

(1938)).  In short, "the Supreme Court's yardstick demands that courts be very confident that a

party cannot recover the jurisdictional amount before dismissing the case for want of

jurisdiction."  See Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993).


2.  Analysis

Mr. Clark argues that CUMIS has failed to satisfy the requisite $75,000 amount

in controversy to establish diversity jurisdiction.  See Suppl. Mot. to Dismiss at 4.  Mr. Clark

acknowledges that the amount stated in the complaint controls if made in good faith, but he

asserts that this is "[n]ot the case here."  See id. at 4.  Although Mr. Clark does not offer any

evidence affirmatively indicating bad faith, he argues that CUMIS has not provided sufficient

factual support for its asserted demand.  See id. at 2-3.  And CUMIS is not entitled to recover the

amount claimed, Mr. Clark argues, because "CUMIS is now seeking [what] has already been awarded to the plaintiff in a criminal Restitution Order . . . ." See id. at 4.

It appears to the Court that, although Mr. Clark challenges the total damages amount alleged by CUMIS, he has not proffered any reason to think the amount in controversy is less than $75,000. While it is not clear from the amended complaint precisely how CUMIS calculated the exact amount of damages now sought, this is a matter to be proven by a preponderance of the evidence at trial. At the motion to dismiss stage, even a "cursory" allegation of the amount in controversy can be sufficient. See Bronner v. Duggan, 249 F. Supp. 3d at 37 (citations omitted). CUMIS has alleged damages totaling $540,196.14, an amount well-above the jurisdictional amount of $75,000. This total amount, CUMIS asserts, encompasses those harms accounted for in the criminal restitution order, as well as additional harms stemming from Mr. Clark's fraudulent conduct. See Opp'n to Suppl. Mot. to Dismiss at 2-3. And the criminal restitution order does not categorically bar CUMIS from seeking civil damages. See Kiwanuka v. Bakilana, 844 F. Supp. 2d 107, 116 (D.D.C. 2012) ("It is well established that an order of restitution does not bar subsequent civil suits; at most, it may offset any future recovery of compensatory damages for the same loss."); cf. 18 U.S.C. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim.").

Although CUMIS has not definitively demonstrated its entitlement to the $540,196.14 amount in civil damages it seeks, see infra Part III, CUMIS is not required to do so in order to survive a motion to dismiss. Because the amount in controversy alleged by CUMIS is well above the jurisdictional requirement and does not appear to have been asserted in bad faith, the Court will deny Mr. Clark's motion to dismiss the amended complaint for lack of subject

matter jurisdiction under Rule 12(b)(1).  See Rosenboro v. Kim, 994 F.2d at 17; Bronner v. Duggan, 249 F. Supp. 3d at 38.

### B.  Dismissal for Failure to State a Claim Under Rule 12(b)(6)

#### 1.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  See FED. R. CIV. P. 12(b)(6).  Generally, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see also Henok v. Kessler, 78 F. Supp. 3d 452, 457 (D.D.C. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

With respect to fraud, the complaint must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require that the circumstances constituting the alleged fraud be pleaded with particularity.  See FED. R. CIV. P. 9(b); see also United States ex rel. Shea v. Cellco P'ship, 863 F.3d 923, 936 (D.C. Cir. 2017).  Specifically, the complaint must set forth "the time, place, and content of the fraud and . . .

identify the individuals allegedly involved." See United States ex rel. Shea v. Cellco P'ship, 863 F.3d at 936 (citing United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004)). Rule 9(b), however, does not require a plaintiff to set forth pleadings in the utmost detail: "[W]hen a plaintiff describes the nature of the alleged misrepresentations, the general time frame in which they were made, and the parties involved, . . . his failure to specify the exact time and particular place of each misrepresentation or omission will not mandate dismissal of his claim." See Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (internal quotation marks and citation omitted). The purpose of Rule 9(b), like the general pleading standard, is simply "to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." See United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc., 270 F. Supp. 3d 146, 152-53 (D.D.C. 2017) (quoting United States ex rel. Health v. AT&T, Inc., 791 F.3d 112, 125 (D.C. Cir. 2015)).

   In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." See Bell Atl. Corp. v. Twombly, 550 U.S. at 572 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); see also Henok v. Kessler, 78 F. Supp. 3d at 457. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it "liberally in the plaintiffs' favor," see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012). The Court must grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged," although it need not accept plaintiff's legal conclusions or inferences drawn by

the plaintiff if those inferences are unsupported by facts alleged.  See Hettinga v. United

States, 677 F.3d at 476 (citations omitted); Henok v. Kessler, 78 F. Supp. 3d at 457-58.


## 2.  Analysis

Mr. Clark raises two colorable arguments for dismissal of the complaint under

Rule 12(b)(6).[6]  First, Mr. Clark argues that CUMIS has not provided any "specific allegations"

beyond the three wire transfers "in which the actual dates and amounts of loss are described."

See Suppl. Mot. to Dismiss at 3; see also Reply to Suppl. Mot. to Dismiss at 2.  As a result, he

maintains that CUMIS has failed to plead fraud with particularity as required under Rule 9(b).

See Suppl. Mot. to Dismiss at 2; Reply to Suppl. Mot. to Dismiss at 2-3.  Second, Mr. Clark

states that there is "no independent tort for breach of fiduciary duty," see Suppl. Mot. to Dismiss

at 2, although he does not further discuss or brief the issue beyond this summary assertion.

Although CUMIS's amended complaint does not set forth each individual

instance of allegedly fraudulent conduct, it has pleaded fraud with sufficient particularity to

satisfy Rule 9(b)'s requirements and survive Mr. Clark's motion to dismiss.  The amended

complaint sets forth with particularity the place and content of each category of alleged

fraud – the cash deposit scheme, the stop-payment scheme, and the wire-transfer scheme.  In the

amended complaint, CUMIS also specifies the individuals allegedly involved in each fraudulent

scheme, including Mr. Clark, and describes the role each person played with specificity.

Although the amended complaint does not provide the exact date and time of every single

---

[6]     Mr. Clark also argues that the amended complaint should be dismissed under
Rule 12(b)(6) because plaintiff has not submitted adequate documentation to support the amount
of damages sought.  But for the reasons discussed supra in Part II(A)(2) the Court determines
that plaintiff has pleaded sufficient facts to support a plausible claim for damages in excess of the
jurisdictional amount.  And the amended complaint need not include a detailed accounting in
order to survive a motion to dismiss.

allegedly fraudulent occurrence, it need not do so.  See Daisley v. Riggs Bank, N.A., 372 F.

Supp. 2d at 78-79.  Each incident would have taken place during the course of Mr. Clark's

two-year period of employment by Hoya.  Considering the amended complaint in its entirety, the

Court determines that the specificity with which CUMIS has set forth the circumstances

constituting the alleged frauds satisfies Rule 9(b) – the allegations contain sufficient substance to

have afforded Mr. Clark a meaningful opportunity to respond and warranted further judicial

process.  See United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc., 270 F. Supp. 3d at

152-53.

   Mr. Clark's second argument asserts that breach of fiduciary duty does not

amount to an independent tort, and CUMIS has asked the Court to deem the argument withdrawn

or waived because Mr. Clark has failed to brief it.  See Opp'n to Suppl. Mot. to Dismiss at 5-6.

In light of Mr. Clark's pro se status, however, the Court will briefly explain why the argument

fails on its merits.  Contrary to Mr. Clark's assertion, District of Columbia law does recognize an

independent tort for breach of a fiduciary duty.  See, e.g., Jericho Baptist Church Ministries, Inc.

(D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.), 223 F. Supp. 3d 1, 11 (D.D.C. 2016)

("District of Columbia law applies to this action and such a [breach of fiduciary duty] claim is

cognizable under District of Columbia law." (citing Randolph v. ING Life Ins. & Annuity Co.,

973 A.2d 702, 709 (D.C. 2009))).  And while CUMIS has asserted a claim for breach of

fiduciary duty in regard to the same allegations that support its claims for fraud and unjust

enrichment, plaintiffs are entitled to plead in the alternative.  See FED. R. CIV. P. 8(d)(2).

Accordingly, CUMIS's pleadings satisfy the requirements of Rules 8 and 9(b) and the Court will

not dismiss the amended complaint for failure to state a claim for relief under Rule 12(b)(6).

### C. Dismissal as a Discovery Sanction

#### 1. Legal Standard

Where a plaintiff fails to comply with a discovery order, a court may impose a range of sanctions, including dismissal.  See FED. RS. CIV. P. 37(b)(2)(A), 41(b); Bradshaw v. Vilsack, 286 F.R.D. 133, 140 n.5 (D.D.C. 2012).  The "central requirement" of a Rule 37 sanction is that it "must be just."  See Campbell v. Nat'l R.R. Passenger Corp., 309 F.R.D. 21, 25-26 (D.D.C. 2015) (citation omitted); see also Bradshaw v. Vilsack, 286 F.R.D. at 140; Arias v. Dyncorp Aerospace Operations, LLC, 677 F. Supp. 2d 330, 332 (D.D.C. 2010).  The extreme sanction of dismissal is a last resort, appropriate only when lesser sanctions will not suffice. Thus, it is warranted only if:  (1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case"; (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay; or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." See Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (citations omitted); see also Young v. Office of the U.S. Senate Sergeant at Arms, 217 F.R.D. 61, 65-66 (D.D.C. 2003). In addition, before imposing the sanction of dismissal, "a district court must consider whether lesser sanctions would be more appropriate for the particular violation because the judicial system favors disposition of cases on the merits."  See Bradshaw v. Vilsack, 286 F.R.D. at 140 (quoting Moore v. Napolitano, 723 F. Supp. 2d 167, 179 (D.D.C. 2010)); see also Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996) ("[D]ismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile." (citation omitted)).

These parameters apply not only to dismissal, but to any other severe sanction that effectively denies a party the right to a trial on the merits. See Bradshaw v. Vilsack, 286 F.R.D. at 140 (citing Bonds v. District of Columbia, 93 F.3d at 808-09, and Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d 137, 151 (D.D.C. 2011)). As a result, a litigation-ending sanction must be supported by a finding either (1) that the more severe sanction is necessary to avoid prejudice to the opposing party or to the court's calendar or to prevent a benefit to the sanctioned party or (2) if the sanction is based only on deterring future misconduct, that the sanctioned party engaged in "flagrant or egregious misconduct." See Bonds v. District of Columbia, 93 F.3d at 809. "In determining whether a party's misconduct prejudices the other party so severely as to make it unfair to require the other party to proceed with the case, courts look to whether the aggrieved party has cited specific facts demonstrating actual prejudice, such as the loss of key witnesses." Campbell v. Nat'l R.R. Passenger Corp., 309 F.R.D. at 26 (quoting Bradshaw v. Vilsack, 286 F.R.D. at 140-41). And although a court may presume that some prejudice results from any "unreasonable delay," dismissal is warranted only where there are "specific, factually supported allegations" of severe actual prejudice. See Bradshaw v. Vilsack, 286 F.R.D. at 141 (citations omitted).

### 2. Analysis

On June 26, 2006, the Court referred this case to a magistrate judge for management of discovery. See Order [Dkt. No. 34] (June 26, 2006). Before Magistrate Judge Deborah A. Robinson, the parties disputed whether Mr. Clark was entitled to documents belonging to Hoya – documents which CUMIS had not produced to Mr. Clark, but which had been provided to the FBI. See generally Mot. to Compel; Opp'n to Mot. to Compel; Reply to Mot. to Compel. After CUMIS failed to show that the responsive documents were not in its

possession, custody, or control, Magistrate Judge Robinson granted Mr. Clark's motion to compel and directed CUMIS to produce all responsive documents. Thereafter, CUMIS attempted to comply with Magistrate Judge Robinson's order, but apparently had difficulty arranging for Mr. Clark to pick up or view the documents. See Mot. to Recons. Eventually, CUMIS filed a motion to reconsider Magistrate Judge Robinson's order granting the motion to compel, citing Mr. Clark's refusal to coordinate delivery and insistence on reviewing hard-copy originals of documents that already had been made available to him in electronic format. See Mot. to Recons. Mem. at 2-5. Magistrate Judge Robinson granted CUMIS's motion to reconsider, ordering Mr. Clark to coordinate the delivery of confidential documents and to reimburse CUMIS for costs incurred to produce physical documents already made available to him in electronic format. See Order [Dkt. 60] (Oct. 1, 2007). CUMIS now explains that it was "ultimately able to arrange delivery of some documents to Mr. Clark in the fall of 2007," but "two years later CUMIS was still trying to obtain Mr. Clark's availability to review archived [Hoya] documents maintained off-site." See Opp'n to Suppl. Mot. to Dismiss at 7; Opp'n to Suppl. Mot. to Dismiss Ex. F.

Upon review of the record, the Court determines that CUMIS has not engaged in any kind of extreme conduct warranting the severe sanction of dismissal. Although CUMIS initially refused to produce documents belonging to Hoya, CUMIS subsequently complied with Magistrate Judge Robinson's orders, contacting Mr. Clark to arrange the delivery of those documents just three days after Magistrate Judge Robinson granted his motion to compel. See Mot. to Recons. Mem. at 2. And when CUMIS received no response from Mr. Clark, CUMIS continued its attempts to contact him to coordinate delivery. See id. at 2-4.

Mr. Clark does not deny that CUMIS made these attempts to comply with Magistrate Judge Robinson's order. Rather, he argues that he was prejudiced because CUMIS "never produced" the documents, instead seeking to charge him $13,000 for production of hard copies. See Suppl. Mot. to Dismiss at 5; Reply to Suppl. Mot. to Dismiss at 5; see also Reply to Mot. for Summ. J. at 4 (acknowledging that CUMIS erroneously stated that it would charge Mr. Clark $13,000 for production of hard copies, but later corrected this amount to $1,300). But Mr. Clark does not make any specific allegations that indicate CUMIS failed to comply with Magistrate Judge Robinson's directives, particularly in light of her subsequent order explaining that Mr. Clark would not be entitled to confidential documents unless he coordinated their delivery or pick-up and reimbursed CUMIS for the costs incurred to produce physical documents. See Order [Dkt. 60] (Oct. 1, 2007). As a result, the Court does not believe CUMIS's conduct warrants imposing a sanction in this case, either dismissal or any lesser sanction.[7]

### III.  MOTION FOR SUMMARY JUDGMENT

CUMIS asks the Court to deem admitted its unanswered requests for admissions as a sanction for Mr. Clark's failures to comply with his discovery obligations. CUMIS also seeks summary judgment on the basis of Mr. Clark's criminal convictions, which CUMIS argues collaterally estop him from disputing his liability in this related civil proceeding.

---

[7]    In so ruling, however, the Court notes that, prior to entry of the second stay in this case, Mr. Clark's then-counsel maintained that CUMIS had yet to comply with its discovery obligations. See Opp'n to Mot. for Summ. J. Mem. at 5-7. Accordingly, the Court will provide Mr. Clark with an opportunity to represent, with specificity, whether he believes that any particular discovery remains outstanding, and if appropriate, the Court will reopen discovery for such limited purposes.

*A.  Legal Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); FED. R. CIV. P. 56(a), (c).  In making that determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  See Baumann v. District of Columbia, 795 F.3d at 215; see also Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).  A disputed fact is "material" if it "might affect the outcome of the suit under the governing law."  See Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment.  Thus, [a court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial."  Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866; Baumann v. District of Columbia, 795 F.3d at 215; Allen v. Johnson, 795 F.3d 34, 38 (D.C. Cir. 2015).

## B. Analysis

### 1. Discovery and Sanctions

CUMIS argues that Mr. Clark should be sanctioned for his failure to appropriately participate in this case. See Suppl. Mot. for Summ. J. at 5, 10-11. Specifically, CUMIS asserts that Mr. Clark has never responded to its requests for admissions and thus asks that they be deemed admitted. See id. at 6.[8] And because such admissions would be dispositive of the entire case, CUMIS asks the Court to grant it summary judgment. See id. CUMIS also asks the Court to grant it summary judgment on the basis of adverse inferences stemming from Mr. Clark's refusal to appear for his deposition, see id. at 7-8, and to enter default judgment against Mr. Clark for his general failure to participate in the case, see id. at 10-11.

Under Rule 36(a)(3) of the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." CUMIS's Second Request for Admissions is dated September 6, 2007, and CUMIS asserts that a copy was forwarded to Mr. Clark on that date, although the exhibit submitted to the Court does not include any certificate of service. See Suppl. Mot. for Summ. J. Ex. A; Suppl. Mot. for Summ. J. at 2. Under Rule 36(a)(3), Mr. Clark was obligated to respond to the request for admissions – with a written answer or objection – on or before October 6, 2007. Instead, it appears he simply did not respond. The Court thereafter stayed the case

---

[8]     To be clear, Mr. Clark did respond to CUMIS's first set of requests for admissions through his prior counsel. This response consisted entirely of objections, largely based on the fact that the request "was propounded so that Clark's responses are due after the discovery deadline." See Reply to Suppl. Mot. to Dismiss Ex. 2 at 1. After Magistrate Judge Robinson reopened discovery on August 20, 2007, CUMIS served its second set of requests for admissions on Mr. Clark, who was then proceeding pro se. CUMIS avers that Mr. Clark never responded to this second set of requests for admissions, a fact that Mr. Clark does not deny.

pending the final outcome of the related criminal proceedings. After all criminal appeals were exhausted, the Court issued a minute order lifting the stay on April 3, 2017.

CUMIS requests sanctions that would effectively deny Mr. Clark the right to a trial on the merits of this case. As a result, the requested sanctions would be appropriate only if supported by a finding either (1) that the more severe sanction is necessary to avoid prejudice to the opposing party or to the court's calendar or to prevent a benefit to the sanctioned party or (2) if the sanction is based only on deterring future misconduct, that the sanctioned party engaged in "flagrant or egregious misconduct." See Bonds v. District of Columbia, 93 F.3d at 809; see also supra Part II(C)(1).

Although Mr. Clark does not contest his failures to respond to CUMIS's requests for admissions and to appear for his deposition, the Court is mindful that he is not only proceeding pro se, but was imprisoned as a result of his criminal convictions for a significant period of time during the pendency of this case. Particularly in light of the factual background and circumstances of this case, it does not appear to the Court that his conduct has been so flagrant or egregious as to warrant summary or default judgment at this time. Litigation can be difficult for any pro se party, but Mr. Clark faced concurrent criminal, civil, and administrative proceedings, as well as apparent frustrations with the discovery process. See, e.g., Opp'n to Suppl. Mot. for Summ. J. at 4-5. Although the Court is sympathetic to CUMIS's frustrations in attempting to get civil discovery from Mr. Clark, the Court cannot conclude that Mr. Clark's conduct stems from a flagrant disregard for the litigation process.

Discovery in this case occurred many years ago and well in advance of the resolution of the related criminal proceedings. Now that the criminal case has concluded, and in light of the pro se status of Mr. Clark and the entire record of this case, the Court finds good

cause to re-open discovery for a limited period.  See FED. R. CIV. P. 16(b)(4).  Rather than impose a severe, litigation-ending sanction, the Court will permit CUMIS to serve on Mr. Clark a third set of requests for admissions.  Similarly, the Court will permit CUMIS to depose Mr. Clark.  Mr. Clark had earlier refused to be deposed by invoking his Fifth Amendment privilege against self-incrimination in light of the pending criminal case.  See Suppl. Mot. for Summ. J. Ex. N.  And CUMIS maintains that "there can be no question that Mr. Clark has, and will, refuse to answer any substantive questions regarding his subject actions."  See Suppl. Mot. for Summ. J. at 7.  But there has yet to be an opportunity to attempt to depose Mr. Clark now that he has no privilege against self-incrimination with regard to the matters for which he was indicted and convicted.  "It is clear that the privilege against self-incrimination ceases to apply once a witness has been convicted of the offense with respect to which he fears incrimination." United States v. Pardo, 636 F.2d 535, 543 (D.C. Cir. 1980); see also United States v. Lugg, 892 F.2d 101, 102 (D.C. Cir. 1989).  It is also true, however, that a witness "does not lose his Fifth Amendment right to refuse to testify concerning other matters or transactions not included in his conviction or plea arrangement."  See United States v. Pardo, 636 F.2d at 544.

The Court cautions Mr. Clark that, although he is a pro se defendant, he is nonetheless required to actively participate in this case and comply with the Court's rulings.  In particular, the Court directs Mr. Clark to Rules 30, 36, and 37 of the Federal Rules of Civil Procedure.  Under those Rules, if Mr. Clark fails to attend a properly noticed deposition, the Court may require him to pay for CUMIS's "expenses for attending, including attorney's fees," see FED. R. CIV. P. 30(g)(1), or order other sanctions as appropriate, including an order entering default judgment against Mr. Clark, see FED. R. CIV. P. 37(d)(3); FED. R. CIV. P. 37(b)(2)(A). And if Mr. Clark does not provide written answers or objections – with adequate

explanations – to CUMIS's third set of requests for admissions by the deadline set by the Court, the Court will deem them admitted; that is, the Court will proceed as if Mr. Clark had explicitly admitted each of those statements to which he does not adequately respond.  See Fed. R. Civ. P. 36(a)(3).  In order to avoid such a sanction, the Court directs Mr. Clark to the provision of Rule 36 that explains his options for adequately responding to CUMIS's third set of requests for admissions:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

See Fed. R. Civ. P. 36(a)(4).  In addition, the Court notes that grounds for any objection to a request for admission "must be stated" and "[a] party must not object solely on the ground that the request presents a genuine issue for trial."  See Fed. R. Civ. P. 36(a)(5).  If Mr. Clark has any questions regarding his rights and obligations in these proceedings, he may raise them at the upcoming status conference in this case or at any other time in the future.

## 2.  Collateral Estoppel

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  See United States v. All Assets Held at Bank Julius, 229 F. Supp. 3d 62, 73 (D.D.C. 2017) (quoting Yamaha Corp. of Am. v.

United States, 961 F.2d 245, 254 (D.C. Cir. 1992)).  Applications of collateral estoppel must meet a three-prong test:

> First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction . . . .  Third, preclusion in [a subsequent proceeding] must not work an unfairness.

See id. (quoting Otherson v. U.S. Dep't of Justice, 711 F.2d 267, 273 (D.C. Cir. 1983)).  In order to determine which facts carry preclusive weight, the Court conducts a case-by-case inquiry and must examine the record of the prior proceeding.  See Bravo-Fernandez v. United States, 137 S. Ct. 352, 359 (2016).

Where a civil litigant seeks to estop an opposing party based on a prior criminal proceeding, estoppel only applies to those matters that must have been decided in favor of the government in the prior case or, in other words, to those issues necessary to the criminal judgment.  See SEC v. Bilzerian, 29 F.3d 689, 693-95 & 694 n.10 (D.C. Cir. 1994).  It logically follows that, where a civil complaint alleges conduct beyond that for which the defendant was convicted in an earlier criminal case, a plaintiff is not entitled to summary judgment on grounds of collateral estoppel alone.  See Int'l Telecomms. Satellite Org. v. Colino, Nos. 88-1266, 87-2749, 1992 WL 93129, at *5-6 (D.D.C. Apr. 15, 1992).  In addition, where there is an acquittal in the criminal case, the acquittal does not have a preclusive effect in a future civil action due to the difference between the relevant burdens of proof, as the acquittal may simply mean that the offense was not proved beyond a reasonable doubt, whereas in the civil setting, a claim need only be proven by a preponderance of the evidence.  See Dowling v. United States, 493 U.S. 342, 349-50 (1990).  The Mandatory Victims Restitution Act ("MVRA") codifies the application of these traditional collateral estoppel principles where, as here, a restitution order

was issued in the prior criminal case.  See 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4474 n.50 (2d ed. 2018); see also 18 U.S.C. § 3664(l) (2002).

As a result of the criminal proceeding, Mr. Clark was convicted of three counts of bank fraud (18 U.S.C. § 1344), two counts of wire fraud (18 U.S.C. § 1343), and two counts of creating a false entry in federal credit institution records (18 U.S.C. § 1006).  See Suppl. Mot. for Summ. J. Ex. F.  He was acquitted of a fourth count of bank fraud.  See id.  In the instant case, CUMIS has brought civil claims of fraud against Mr. Clark, pleading breach of a fiduciary duty and unjust enrichment in the alternative.  See Am. Compl. at 4-7.  Mr. Clark has maintained that Hoya's losses did not stem from his own conduct, but from that of other Hoya employees.  See Opp'n to Mot. for Summ. J. Mem. at 8; see also Reply to Suppl. Mot. to Dismiss at 4.

It is established that a criminal jury trial conviction may preclude a civil party from subsequently relitigating an issue necessarily decided by the criminal jury.  See, e.g., Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951); SEC v. Bilzerian, 29 F.3d at 694 n.10; Columbia Plaza Corp. v. Sec. Nat'l Bank, 676 F.2d 780, 789-90 (D.C. Cir. 1982); United States v. Beaty, 245 F.3d 617, 624-25 (6th Cir. 2001); United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., No. 95-1231, 2007 WL 851823, *1-2 & n.1 (D.D.C. Mar. 14, 2007); United States v. Uzzell, 648 F. Supp. 1362, 1363-64 (D.D.C. 1986).  Of course, when the criminal jury has returned a general verdict rather than a special verdict, it may be more difficult to determine which issues were necessary to the conviction and thus necessarily decided by the jury beyond a reasonable doubt.  See Columbia Plaza Corp. v. Sec. Nat'l Bank, 676 F.2d at 790; see also United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 2007 WL 851823 at *1-2. In such instances, the Court must examine the record, including "the pleadings, the evidence

submitted, the jury instructions, and any opinions of the courts," to discern which matters were directly put in issue and actually decided in the antecedent proceeding. See United States v. Uzzell, 648 F. Supp. at 1364 (citing Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. at 569); cf. Columbia Plaza Corp. v. Sec. Nat'l Bank, 676 F.2d at 790.

Here, CUMIS has supplied only the criminal indictment and subsequent judgment and commitment orders from Mr. Clark's prior criminal case. See Suppl. Mot. for Summ. J. Ex. E; Suppl. Mot. for Summ. J. Ex. F; Suppl. Mot. for Summ. J. Ex. G. In doing so, CUMIS clearly has not provided the Court with sufficient record evidence to determine what matters were directly at issue and necessarily decided by the jury in the criminal case. See Columbia Plaza Corp. v. Sec. Nat'l Bank, 676 F.2d at 790; United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 2007 WL 851823 at *1-2; United States v. Uzzell, 648 F. Supp. at 1364. As a result, CUMIS is not entitled to summary judgment on grounds of collateral estoppel. Furthermore, even were Mr. Clark to be collaterally estopped from denying the specific conduct underlying his seven criminal convictions, this would not entitle CUMIS to summary judgment. Each of Mr. Clark's criminal convictions stems from discrete factual occurrences.[9] They are

---

[9]    Mr. Clark's three bank fraud convictions appear to stem from the "stop payment" scheme, in which he caused certain checks to be paid but not debited from various Hoya checking accounts. See Suppl. Mot. for Summ. J. at 4-5, 9. The three convictions, in turn, appear to correspond to three different checks determined to have been a part of the scheme: check number 1074, dated December 26, 2002, in the amount of $2361.20; check number 1007, dated December 31, 2002, in the amount of $5648.00; and check number 1170, dated April 10, 2003, in the amount of $217.77. See Suppl. Mot. for Summ. J. Ex. E at 7-8; Suppl. Mot. for Summ. J. Ex. F. Mr. Clark's wire fraud convictions appear to be based on two specific wire transfers:  an April 21, 2003, transfer in the amount of $40,000; and a June 20, 2003, transfer in the amount of $60,000. See Suppl. Mot. for Summ. J. Ex. E; Suppl. Mot. for Summ. J. Ex. F. And Mr. Clark's false entry convictions appear to be based on two account statement entries:  a November 1, 2002, entry in Associate A-1's monthly Hoya account statement and a May 1, 2003, entry in Mr. Clark's monthly Hoya account statement. See Suppl. Mot. for Summ. J. Ex. E; Suppl. Mot. for Summ. J. Ex. F.

based on much narrower factual grounds than CUMIS's broad allegations of fraud, which stem from generally identified schemes, but in large part lack factually detailed assertions and evidence pertaining to specific instances of fraudulent conduct.[10]  Thus, even were the Court to find grounds for collateral estoppel on the basis of Mr. Clark's convictions, CUMIS could not use such collateral estoppel to "boot strap" summary judgment in this case.  See Opp'n to Suppl. Mot. for Summ. J. at 1-2.[11]

---

[10]    In support of its motion, CUMIS provided the Court with a revised statement of material facts that includes only broad factual assertions, reiterating the general allegations contained in its amended complaint.  See Suppl. Mot. for Summ. J. Rev'd Statement of Mat. Fact.  For example, CUMIS proffers that Mr. Clark placed "stop payment" orders on checks and "made false entries on Hoya's bank reconciliations," but does not set forth the details of specific instances in which this allegedly occurred or the specific damages that allegedly resulted.  See id. at ¶¶ 2-7.  While such statements are sufficient to plead a claim upon which relief may be granted and to survive a motion to dismiss, they certainly do not prove the absence of any genuine issue of material fact entitling CUMIS to summary judgment.  In lieu of an appropriately comprehensive and detailed statement of facts and accounting of damages, CUMIS has attached to its motion a handful of records from prior proceedings, affidavits, and other documents.  In doing so, CUMIS seems to suggest that the Court should sift through these various attached papers and divine how and why CUMIS might be entitled to the $540,196.14 in total damages it seeks.  But this is not a task the Court will undertake.  "[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record."  Potter v. District of Columbia, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

[11]    On the other hand, CUMIS is not estopped from pursuing its claims by virtue of any dismissed counts or acquittals.  To the extent Mr. Clark has argued that he can assert collateral estoppel against CUMIS because of his partial acquittal in the criminal proceeding or the dismissal of some charges in the administrative enforcement action before the National Credit Union Administration ("NCUA"), see Opp'n to Suppl. Mot. for Summ. J. at 3, he is incorrect.  As discussed, collateral estoppel only attaches when an issue was "actually and necessarily determined by a court of competent jurisdiction."  See United States v. All Assets Held at Bank Julius, 229 F. Supp. 3d at 73.  NCUA Enforcement Counsel's voluntary dismissal of certain charges necessarily means that those charges were not "determined."  And the jury's acquittal on one charge in the criminal case simply may represent the fact that the offense was not proven beyond a reasonable doubt, whereas in the civil setting, a claim only need be proven by a preponderance of the evidence.  See Dowling v. United States, 493 U.S. at 349-50.

For these reasons, CUMIS has failed to meet its burden to establish that there are no genuine issues of any material fact.  See Celotex Corp. v. Catrett, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.").  The Court will deny CUMIS's motion for summary judgment.  But it will do so without prejudice.  After the close of a limited discovery period, both parties will be permitted to move again for summary judgment if appropriate.

## IV.  CONCLUSION

For reasons set forth in this opinion, the Court will deny Mr. Clark's motion to dismiss [Dkt. Nos. 70 & 164] and deny without prejudice CUMIS's motion for summary judgment [Dkt. Nos. 62 & 163].  An order consistent with this opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 19, 2018